UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

-------------------------------------

| | |
|---|---|
| Remote Technologies Incorporated, | Civil File No. 10-1678 (MJD/JSM) |
| Plaintiff, | **MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL** |
| v. | |
| Data International Co., Ltd., | |
| Defendant. | |

-------------------------------------

## INTRODUCTION

Plaintiff Remote Technologies Incorporated ("RTI") submits this Memorandum of Law in Opposition to Defendant Data International Co., Ltd.'s ("Data")'s Motion to Compel.

RTI respectfully requests that this Court deny Data's Motion to Compel for five reasons:  First, RTI has already fully responded to Request Nos. 21, 33-35, 41, 55, 57, 61, 65, 71-72, 74-75 and 86.  Second, RTI's objections to Request Nos. 44, 49, 54, 58-59, and 62-63 are well-founded and should be upheld.  Third, Data has the ability to open the relevant file extension on its own, as demonstrated by Data's production to RTI of many files bearing the same extensions at issue.  Fourth, RTI has already agreed to supplement its responses to Interrogatory No. 9 once Data produces its documents in numerical order. And fifth, Interrogatory No. 10 requires no further supplementation.

## FACTUAL BACKGROUND

RTI was served with Data's discovery requests on January 7, 2011. RTI responded to that discovery in a timely fashion. Def. Mem. 1. Although the parties had not agreed on the terms of a protective order by the time responses were due, RTI complied with the Court's Pretrial Scheduling Order directing that "any documents which any producing party believes should be governed by a protective order shall be produced to opposing counsel for the attorney's review only and shall not be withheld on the basis that no protective order is in place." Nov. 8, 2010, Pretrial Sched. Order 4. RTI produced more than 20,000 pages of electronic documents, and did not withhold any documents due to the absence of a protective order.

Many of the files produced by both RTI and Data are design files setting out the specifications for the remote controls at issue in this matter. During relevant periods, Data manufactured and assembled T2C and T3 remote controls for RTI. Throughout their relationship, RTI would provide Data with Computer Aided Design ("CAD") drawings and Gerber files relating to the remote controls, and Data would use these files in the manufacture of the remote controls. In responding to Data's discovery requests, RTI provided Data with relevant files in the identical form that they were previously provided during the course of the business relationship. Lervick Aff. ¶ 2. In many instances, Data did the same with its document production. Lervick Aff. ¶ 8-9.

# ARGUMENT

## I. RTI HAS ALREADY COMPLIED WITH DATA'S DISCOVERY DEMANDS

Since the inception of this lawsuit, counsel for Data and counsel for RTI have maintained open lines of communication regarding any disagreements about discovery. Through that process, many of the issues that Data raises in its Motion to Compel have already been addressed and remedied by the parties without the Court's involvement. Some ongoing issues have hampered RTI's ability to respond to Data's discovery including Data's initial production of only approximately 385 pages of documents, it subsequent production of additional documents in large, conglomerate PDFs, and its current production of documents out of numerical order.

### A. RTI Has Not Withheld Any Information or Documents on the Basis that No Protective Order Was in Place

With respect to Document Request Nos. 21, 33-35, 41, 55, 57, 61, 65, 71-72, and 74-75, Data's only concern seems to be a belief that RTI may have withheld relevant documents "on the basis that no protective order is yet in place," in contravention of the Court's Third Amended Pretrial Scheduling Order. Def. Mem. L. 6. As counsel for RTI has told Data numerous times, RTI has not withheld any responsive documents, and the phrase "will produce" in its response was meant to reflect RTI's recognition of its ongoing obligation to supplement discovery, rather than a refusal to produce documents immediately.

Because RTI has not withheld any documents responsive to Document Request Nos. 21, 33-35, 41, 55, 57, 61, 65, 71-72, and 74-75, Data's Motion to Compel must be

denied on the basis that there are no additional documents to produce. If, going forward, RTI identifies any new documents or information responsive to Data's Document Requests, RTI will promptly supplement its responses at that time.

      **B.    Defendant Data Has Repeatedly Ignored RTI's Offers to Make Samples of Defective Circuit Boards Available for Inspection**

Defendant Data claims that "RTI failed to respond to Request No. 86 by providing any samples of defective circuit boards." Def. Mem. L. 13. This is an unfortunate mischaracterization of RTI's position on this subject. Throughout this case, RTI has repeatedly told Data that it would make any number of samples of defective circuit boards available for Data's inspection if they would suggest a mutually agreeable date, time, place, and manner for such an inspection. *See* Vytas Aff. ¶23, Exh. 8. To date, Data has not responded to RTI's offer, other than to repeat their vague demand for samples. Fed. R. Civ. P. 34(b)(1) specifically requires parties requesting the inspection, testing, or sampling of tangible things to "specify a reasonable time, place, and manner for the inspection and for performing the related acts." Data has not met this requirement.

Indeed, it is not clear what Data intends to do with the samples of circuit boards at this late stage of litigation. It is too late for Data or its experts to conduct destructive testing on sample circuit boards, even if RTI consented to such testing, as the deadline for the exchange of full expert reports was October 1, 2011. Third Am. Scheduling Order. If Data's goal is merely to gain possession of the circuit boards, there is nothing in the Rules or case law that entitles Data to obtain custody of the circuit boards returned by

RTI customers. Significantly, during the course of the business relationship, RTI did send sample, defective circuit boards to Data. Consequently, with respect to Request No. 86, Data's Motion to Compel should be denied.

II. **RTI'S OBJECTIONS TO DEFENDANT DATA'S DOCUMENT REQUESTS ARE WELL-FOUNDED AND SHOULD BE SUSTAINED**

    A. **Profit and Revenue Data Are Not Relevant to Any of the Claims or Defenses at Issue in This Case**

Data also moves the Court to compel RTI's production of profit and revenue figures for the T2C and T3 remote controls in response to Document Request Nos. 58-59 and 62-63. To date, RTI has refused to provide such information because did not believe that it was relevant to any of the claims or defenses at issue in this case. During a teleconference between attorneys for both parties on September 16, 2011, RTI asked Data to explain how these requests were within the scope of discovery contemplated by Rule 26(b). At that point, Data's counsel did not provide an answer to RTI's question, but informed us that she would look into the matter and provide an answer at a later date. It was not until a subsequent teleconference on November 10, 2011 that Data's counsel explained Data's belief that profit and revenue figures were relevant to RTI's claim for lost profits. RTI has never indicated that it was asserting a claim for lost profits against Defendant Data, and RTI does not change its position today.

Since RTI does not intend to pursue a claim for lost profits, the information requested in Document Request Nos. 58, 59, 62 and 63 is not relevant to any claims or defenses at issue in this case, and thus is outside of the scope of discovery contemplated by Fed. R. Civ. P. 26(b). Profit and revenue figures for individual products are a

carefully guarded secret of any business, which could cause significant competitive and financial injury if released to competitors or consumers. RTI is not willing nor obligated to provide such sensitive business information unless Data can demonstrate, pursuant to Fed. R. Civ. P. 26(b)(1), that it is "relevant to any party's claim or defense." Data has not met this minimum standard. RTI's objections to Request Nos. 58-59 and 62-63 should be sustained.

### B.     RTI's Objections to Request Nos. 44, 49, and 54 Should Be Upheld

In Request No. 44, Defendant Data seeks: "All documents referring or relating to or accounting for in any way payments that you have given to Data, including annual accounts payable records." As an initial matter, it seems clear that Defendant Data would have equal or better access to the information sought by Request No. 44 as the recipient of the payments at issue. Furthermore, Data manufactured many remote controls for RTI beyond the T2C and T3 models. Request No. 44 is not limited in time or scope, and responding to it would require RTI to provide accounting information that is not relevant to any of the claims or defenses at issue in this case. RTI's objections to Request No. 44 should be sustained.

Request No. 49 seeks: "All documents referring or relating to the relationship between RTI and Subtle Electronic Limited Co." Again, this request is not limited in time or scope, nor is it limited to information relevant to the claims and defenses at issue in this case. RTI's objections to Request No. 49 should be sustained.

Request No. 54 seeks: "All financial records concerning the subject of this litigation, including payments made, interest charged, fees or late charges imposed, and

all similar items that constitute your accounting in this subject matter." This request is vague and overbroad. The term "Financial records" is not defined, much less what Data means by "all similar items that constitute your accounting." It is impossible for RTI to determine what documents would be responsive to Data's Request. If RTI is forced to guess at Data's meaning, the Request could easily encompass every spreadsheet or ledger in RTI's custody or control, as well as other documents. Furthermore, by requesting documents concerning the "subject matter" of this lawsuit, Data seeks information beyond the scope of discovery permitted by the Federal Rules of Civil Procedure without the Court's permission. In general, Rule 26(b)(1) limits parties to requests for "nonprivileged matter that is relevant to any party's claim or defense." Under Rule 26(b)(1), parties are allowed to seek discovery on "any matter relevant to the subject matter" only with the court's permission and "[f]or good cause." Data has not articulated the purpose of their request, much less demonstrated good cause that would allow them to expand the subject matter of their discovery in this fashion. RTI's objections to Request No. 54 should be sustained.

### III. DEFENDANT DATA HAS THE ABILITY TO ACCESS ALL OF THE FILES THAT RTI PRODUCED

Data claims that RTI has not produced all of its documents in a usable form because RTI has not converted all of the files to PDF format or provided Data's counsel with software to open and view all of the file extensions. Because RTI produced the files in the form in which they are ordinarily maintained, and because Data has the ability to

access all of these files without RTI's assistance, Data's Motion to Compel on this issue should be denied.

### A. RTI Produced the Files in the Form in Which They Are Ordinarily Maintained

Fed. R. Civ. P. 34(b)(2)(E)(ii) states: "If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms." Data's Interrogatories and Requests for Production of Documents do not specify a form for production of electronically stored information. In responding to Data's discovery requests, RTI provided Data with the CAD and Gerber files in their native format, as they were previously provided to Data during the course of the business relationship. Lervick Aff. ¶ 2. Significantly, many of these documents cannot be put into PDF or TIFF fomats without a considerable loss of information and ability to use the documents. Lervick Aff. ¶ 3. Because Data has opened these types of files and used the information contained within them to manufacture remote controls for RTI, it is inconceivable why Data would now claim that it does not have the ability to view these same files. RTI met both requirements of Fed. R. Civ. P. 34(b)(2)(E)(ii) by choosing to produce documents in the form they are ordinarily maintained, which is also their most usable form.

Thus, because RTI produced the files in the form in which they are ordinarily maintained, which Defendant Data has previously demonstrated that it has the ability to open, view, and use, Data's Motion to Compel on the issue of file extensions should be denied.

### B. Defendant Data Produced Files Bearing the Same Extensions It Claims It Cannot Access

Defendant Data claims it cannot open and view file extensions such as: DXF, BOT, DRD, DTS, GTD, SMB, SMT, SPT, TOP, TAP, PWR, GBR, HEX, RTI, RTIOBJ, IGS, DRL, FAB, FB2, LIS, GND, A1, C1, C2, C3, C6, C7, C8, D1, G4, L1, L8, M1, M8, P5, S1, S8, NCD, USR, DIM, DIM2, DLL, EPS, and DBK.  Def. Mem. 14.  However Defendant Data produced nearly all of these same extensions in response to Plaintiff's Requests for Production of Documents.[1]  Lervick Aff. ¶ 8.  Contrary to what it claims RTI should do, Defendant Data did not convert these files to PDF format and has not provided any software to open or view such files to RTI; yet, Data now demands that RTI do so for RTI's production.  Lervick Aff. ¶ 9.  Data has not established that it is *possible* for each of these extensions to be converted into PDF or TIFF format, let alone that such a conversion could be completed in a cost-effective manner.  When Data encountered a file that it could not easily convert to PDF, it did not provide RTI with the native file, but simply inserted a placeholder page stating that the attachment "cannot be converted to PDF format."  Lervick Aff. ¶ 9.

It would be extremely unfair if RTI were forced to re-produce its discovery in a certain format or provide Data with software, while Defendant Data has not chosen and

---

[1] The only exception to this pattern are EPS and DLL files.  Without identification of the specific file, it is impossible to know for sure, but "EPS" is a common image format, which can be opened with any number of freely available image viewing programs, and "DLL" is a Dynamic Link Library, a file that contains executable code for Windows programs.  Data has not identified the specific files it claims it cannot open by Bates number, which has made responding to their Motion more difficult.

would not be required to do the same.  It would also be unnecessary.  The fact that Defendant Data produced many of the same files is proof that they have the ability to open and view such files themselves.

Furthermore, RTI *has* already provided the software required to view many of the CAD files that Data claims it cannot access.  On July 28, 2011, Data informed the Court and RTI that it could not open some of the files, and requested that RTI provide the necessary software.  RTI provided a copy of DWG TrueView software, which should allow Data to open and view many of the files at issue.  Lervick Aff. ¶ 10.  However, Data's counsel previously informed RTI that their law firm's computers were not powerful enough to run the software and view the files simultaneously.  Vytas Aff. ¶ 13, Exh. 6.  Data has not cited (nor has RTI been able to locate) any authority from any jurisdiction that requires the party responding to discovery requests to upgrade the requestor's office equipment.

After excluding the CAD files which can be opened with the DWG TrueView software, the vast majority of the remaining files are Gerber files.  Gerber files are the plans used in the printed circuit board industry to manufacture circuit boards according to customer specifications.  As demonstrated, Data had, and likely continues to have, the software required to view Gerber files because of the ability to open, view, and understand such files is essential to their business.  Data asserts that "all of the documents Plaintiff provided containing Gerber files can be easily converted into searchable PDF files," yet when Data provided Gerber files, it did not perform the same conversion that it

demands of RTI. Lervick Aff. ¶ 9. On this basis, Data's Motion to Compel on this issue should be denied.

## IV. RTI HAS AGREED TO SUPPLEMENT INTERROGATORY NO. 9 ONCE DATA PRODUCES DOCUMENTS IN NUMERICAL ORDER

Interrogatory No. 9 requests RTI to "[i]dentify all agreements, whether written or oral, entered into between you and Data." Supplementation of Interrogatory No. 9 will necessarily require reference to the documents produced by Defendant Data. Data has produced over 20,000 pages of documents; however they have been stamped with nonconsecutive Bates numbers between 000001 and 152890 and produced out of numerical order.[2] On October 5, 2011, RTI informed Data that it would supplement its answers Interrogatory No. 9 once Data produces its discovery in a format that allows its review. Data has not yet complied with RTI's request. Without reproduction of Data's documents in numerical order, it is difficult for RTI to respond to Interrogatory No. 9 without incurring an unreasonable burden. Data's Motion to Compel should be denied with respect to Interrogatory No. 9. RTI will supplement its answer within a reasonable time after Data produces their documents in numerical order.

## V. INTERROGATORY NO. 10 REQUIRES NO FURTHER RESPONSE

Interrogatory No. 10 instructs RTI to "[d]escribe in detail for each cause of action in your Complaint each and every *damage you are claiming against RTI in this action . . .*" Vytas Aff. ¶ 3, Exh. 2 (emphasis added). It appears that Data copied one of

---

[2] Many of Data's supplemental interrogatory answers refer to ranges of Bates numbered documents. Since the documents are not in numerical order, it is not possible, without a significant and costly expenditure of time and effort, to review the Bates ranges as a party would normally be able to do.

11.

RTI's Interrogatories verbatim and neglected to change "RTI" to "Data". As a result, Interrogatory No. 10 asks for the damages that RTI is claiming against itself, RTI. RTI is not claiming any damages against itself and Interrogatory No. 10 should require no supplementation. Even so, RTI has already provided a detailed accounting of the damages it is claiming against Defendant Data. Lervick Aff. ¶ 11. RTI will continue to supplement that information as discovery continues and damages continue to accrue. At this time, it is not clear what additional information Data is seeking regarding damages claimed in this lawsuit.

## CONCLUSION

For the foregoing reasons, RTI respectfully requests that the Court deny Defendant's Motion to Compel.

Dated:  November 28, 2011         s/John A. Cotter
                                  John A. Cotter (134296)
                                  Cynthia M. Klaus (27883X)
                                  Craig J. Lervick (0225368)
                                  Larkin Hoffman Daly & Lindgren, Ltd.
                                  1500 Wells Fargo Plaza
                                  7900 Xerxes Avenue South
                                  Bloomington, Minnesota  55431-1194
                                  Phone:  (952) 835-3800
                                  jcotter@larkinhoffman.com

                                  Attorneys for Plaintiff

1379109.3