UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| REMOTE TECHNOLOGIES, INC., | CIV. NO. 10-1678 (MJD/JSM) |
| Plaintiff, | ORDER |
| v. | |
| DATA INTERNATIONAL CO., LTD., | |
| Defendant. | |

The above-entitled matter came before the undersigned on defendant Data International Co.'s Motion to Compel Responses to Interrogatories and Document Requests [Docket No. 40]. John A. Cotter, Esq. and Craig J. Lervick, Esq. appeared on behalf of plaintiff Remote Technologies, Inc. Vytas Rimas, Esq. appeared on behalf of defendant Data International Co., Ltd.

The Court, being duly advised in the premises, upon all the files, records and proceedings herein, the arguments and representations of counsel and for the reasons stated on the record and as described in the Memorandum below, now makes and enters the following Order:

**IT IS HEREBY ORDERED** that**:**

Defendant Data International Co.'s Motion to Compel Responses to Interrogatories and Document Requests [Docket No. 40] is GRANTED in part and DENIED in part.

December 23, 2011

s/ *Janie S. Mayeron*
JANIE S. MAYERON
United States District Court

**MEMORANDUM**

Remote Technologies, Inc. ("RTI") sued Data International Co., Ltd. ("Data"), a manufacturer of high-end remote control devices,[1] for breach of contract, breach of express warranty, breach of implied warranty of merchantability, and breach of implied fitness for a particular purpose in connection with Data's manufacture of defective remote controls, which RTI sold to its customers. Complaint, ¶¶6, 17-33 [Docket No. 1].

Data served interrogatories and requests for the production of documents on RTI on January 7, 2011. Declaration of Vytas Rimas in Support of Defendant's Motion to Compel ("Rimas Decl."), ¶2 [Docket No. 43]; Ex. 1 (Defendant's Interrogatories to Plaintiff); Ex. 2 (Defendant's Request for Production of Documents). RTI served its responses and objections on March 2, 2011. Rimas Decl., ¶¶5, 6; Ex. 4 (Plaintiff's Answers and Objections to Defendant's Interrogatories); Ex. 5 (Plaintiff's Responses and Objections to Defendant's Request for Production of Documents). RTI produced 20,384 pages of documents in electronic format in response to Data's discovery requests. Rimas Decl. ¶7. Data now complains that RTI has not produced information and documents responsive to certain interrogatories and document requests seeking information bearing on agreements, damages, design specifications and defects. Data also seeks an order requiring RTI to produce samples of defective circuit boards and the documents RTI has produced to date in a useable format.

---

[1] The remotes at issue are the T2C and T3 models. Complaint, ¶6 [Docket No. 1].

## II.  DECISION

Pursuant to Fed. R. Civ. P. 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense …[and f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Further "[r]elevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(2).  Rule 26(b) is "widely recognized as a discovery rule which is liberal in scope and interpretation, extending to those matters which are relevant and reasonably calculated to lead to the discovery of admissible evidence." Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1992) (citing Kramer v. Boeing Co., 126 F.R.D. 690, 692 (D. Minn. 1989) (and cases cited therein)).  However, "some threshold of showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case."  Id.

In light of this standard, the Court ordered as follows regarding discovery at issue:

1. **Agreements**

    **Interrogatory No. 9:**  Identify all agreements, whether written or oral, entered into between you and Data.

    **Document Request No. 71**:  All documents you claim from (sic) the contract(s) or business relationship(s) under which Data sold T2C and T3 remote controls to RTI, including all documents that reflect, refer to, or constitute the terms and conditions of those sales.

    In response to Interrogatory No. 9 and related Document Request No. 71, RTI indicated that Data produced over 20,000 pages of documents to RTI stamped with

3

non-consecutive Bates numbers and produced the documents out of numerical order. RTI's Memorandum of Law in Opposition to Defendant's Motion to Compel ("RTI Mem. in Opp.") p. 11 [Docket No. 45]. According to RTI, answering this Interrogatory and Document Request required RTI to refer to the documents Data produced, because some of the agreements sought by the requests were from Data's files. Id. As a result, RTI could not respond to these requests without expending an undue amount of time and effort sorting through the non-consecutively numbered documents. Id. RTI represented it would supplement Interrogatory No. 9 once Data re-produced the documents in numerical order. Id.

As RTI has relied on Fed. R. Civ. P. 33(d) in its response, on or before December 15, 2011, RTI must supplement its answer to Interrogatory No. 9 and provide the Bates numbers of the documents it has produced from its files that are responsive to Interrogatory No. 9. See Synventive Molding Solutions, Inc. v. Husky Injection Molding, 262 F.R.D. 365, 378 (D. Vt. 2009) (Fed. R. Civ. P. 33(d) requires the identification of relevant Bates numbers of responsive documents). This Court rejected RTI's argument that it needs Data's documents before it can respond to this Interrogatory. However, after receiving Data's documents in numerical order, if RTI finds that its response to this Interrogatory should be further supplemented, it shall do so. Data's motion as to Document Request No. 71 was denied. Data not shown to this Court's satisfaction that RTI has withheld any documents in its possession, custody or control responsive to Document Request No. 71.

   2. **Damages**

      **Interrogatory No. 10:** Describe in detail for each cause of action
      in your Complaint each and every damage you are claiming against

4

RTI[2] in this action, including but not limited to the type and nature of each damage; the amount of each type of damage, the method used for calculating each type of damage; the facts on which you based your damage calculations and all documents and witnesses that support your damages in this matter.

**Document Request No. 58**: All documents referring to or relating to or evidence the revenue RTI received from the sale of T2C remote controls that RTI purchased from Data on a monthly and yearly basis by model number.

**Document Request No. 59**: All documents referring or relating to or evidencing the profits RTI received from the yearly sale of T2C remote controls that RTI purchased from Data on a monthly and yearly basis by model number.

**Document Request No. 62**: All documents referring or relating to or evidence the revenue RTI received from the sale of T3 remote controls that RTI purchased from Data on a monthly basis and yearly basis by model number.

**Document Request No. 63**: All documents referring to relating to or evidencing the profits RTI received from the sale of T3 remote controls that RTI purchased from Data on a monthly and yearly basis by model number.

Interrogatory No. 10 and Document Request Nos. 58, 59, 62 and 63 all sought information regarding RTI's damages. Data objected to RTI's answer to Interrogatory No. 10 on the grounds that RTI failed to provide any substantive information regarding damages. At the motion hearing, Data indicated that it had not received any information regarding damages from RTI, except for a damages calculation RTI provided pursuant to Fed. R. Civ. P. 408 in connection with settlement discussions. In response, RTI argued that Data was not entitled to the information sought by this discovery, as it is not seeking lost profits or revenues. RTI Mem. in Opp.") pp. 5-6 [Docket No. 45]. In reply,

---

[2] The Court clarified at the hearing that Data intended to ask about damages RTI was claiming against Data.

Data's counsel indicated that RTI had only recently indicated that RTI was not seeking lost profits and revenue, but was limiting its damages to out-of-pocket costs of repair and replacement of the defective remote controls. However, that information had not been provided in the context of a sworn answer to Interrogatory No. 10.

RTI must supplement its response to Interrogatory No. 10 by December 15, 2011 to provide the Bates numbers of documents on which RTI relied to support its response, as required by Fed. R. Civ. P. 33(d). In addition, RTI must state the basis for its damages calculation, including that its measure of damages is the costs to replace and repair the defective remote controls, and not lost profit and revenue as it has represented to Data and this Court. This Court denied Data's motion with respect to Document Request Nos. 58, 59, 62, and 63. RTI stated that is not seeking lost profits or revenue (as it will affirm in response to Interrogatory No. 10). Therefore, these requests seek documents not reasonably likely to lead to the discovery of admissible evidence.

### 3. Documents Withheld Due to Lack of Protective Order

**Document Request No. 21**: All documents that refer or relate to RTI['s] own testing of samples of the returned remote controls as alleged in Paragraph 13 of the Complaint.

**Document Request No. 33**: All documents that refer or relate to RTI's incurred direct costs in excess of $1,000,000 to replace the defective remote controls as alleged in Paragraph 15 of the Complaint.

**Document Request No. 34**: All documents that refer or relate to the communications and emails with and identity of the RTI customers as alleged in Paragraph 15 of the Complaint.

**Document Request No. 35**: All documents that refer or relate to the direct cost to repair and/or replace the defective remote controls

that were incurred by RTI as alleged in Paragraph 15 of the Complaint.

**Document Request No. 41**:  All documents that relate to Defendant Data's claimed damages in this matter.

**Document Request No. 44**: All documents referring or relating to or accounting for in any way payments that you have given to Data, including annual accounts payable.

**Document Request No. 55**:  All documents that constitute, explain, describe, evidence, support or in any other way justify or provide the foundation for any damages that you seek in this action.

**Document Request No. 65**:  All documents that refer or relate to or constitute any communication, including email that you have had with Data, its agents, and representatives concerning the subject of this litigation, and your damages.

**Document Request No. 72**:  All requirements, specifications, designs, software, quality requirements, and instructions provided to Data by RTI regarding the assembly, testing, packaging and shipping of the T2C and T3 remote controls sold by Data to RTI.

**Document Request No. 74**:  All documents concerning, reflecting, referring to changes in the requirements, specifications, designs, quality requirements, and instructions concerning the manufacture of the blank circuit boards for the T2C and T3 remote controls sold by Data to RTI, including any change with respect to the materials to be used in the manufacture of the blank circuit boards.

**Document Request No. 75**:  All documents concerning, reflecting, referring to changes in the requirements, specifications, designs, quality requirements, and instructions concerning the manufacture of the ball grid arrays for the T2C and T3 remote controls sold by Data to RTI, including any changes with respect to the materials to be used in the manufacture of the ball grid arrays.

Data moved to compel responses to Document Request Nos. 21, 33-35, 41, 44, 55, 57, 61, 65, 71, 72, 74, and 75 based on its belief that RTI had withheld documents because there was no protective order in place at the time RTI answered, in

contravention of this Court's Third Amended Pretrial Scheduling Order.[3] Defendant's Memorandum in Support of Motion to Compel ("Data Mem. in Support") [Docket No. 42], p. 2; Rimas Decl., ¶9. RTI countered that it had told Data "numerous times" that RTI had not withheld any responsive documents. RTI Mem. in Opp. p. 3. In its Reply brief and at the motion hearing, Data abandoned the argument that RTI improperly withheld documents because of the lack of a protective order and instead focused on the overall adequacy of RTI's responses. Reply to Response by Plaintiff to Defendant's Motion to Compel [Docket No. 47].[4] Data withdrew its motion to compel as to RTI's responses to Request Nos. 44 and 54 at the motion hearing, therefore, the Court will not address those Requests.

With respect to Document Request Nos. 21, 33-35, 41, 55, 65, 72, 74 and 75 this Court denied Data's motion. Data has not shown to this Court's satisfaction that RTI has withheld any documents responsive to these requests.

### 4. Accessibility of Files Produced by RTI

Data complained that it lacked the proper software to open "file extensions" on the documents RTI produced. Data Mem. in Support, p. 14; Rimas Decl., ¶8. RTI twice provided Data with software to open the electronic files, but Data was still unable to

---

[3] The Third Amended Pretrial Order (as did the earlier scheduling orders) states: "[t]he parties intend to enter into a protective order. In the interim, any documents which any producing party believes should be governed by a protective order shall be produced to opposing counsel for the attorney's review only and shall not be withheld on the basis that no protective order is yet in place. After the protective order is entered, the producing party shall designate the documents under the protective order. Third Amended Pretrial Order, p. 4 [Docket No. 39].

[4] As a result of Data's shift in focus, this Court relied primarily on the arguments of counsel rather than the parties' legal memoranda in deciding Data's motion.

open the files.  Id., ¶¶11-12, 15.  Data requested the Court order RTI to produce the documents in a PDF.  Data Mem. in Support, p. 14.

In response, RTI contended that it produced the software to Data to view many of the files; Data had produced the electronic files in the form in which they were ordinarily kept, produced them in their native format; these same documents were previously provided to Data in the same format during the course of RTI and Data's business relationship (and Data had no problem opening them at that time); and during the litigation Data had produced to RTI its documents using nearly all of the same extensions that Data now complains it cannot open.  RTI Mem. in Opp., pp. 7-10.  Therefore, it was "inconceivable" to RTI why Data could not now open the files.  Id., p. 8.  In addition, to the extent that some of the files were converted to a PDF format that Data could open, that conversion could not be made without the loss of a considerable amount of information.  Id.; Declaration of Craig J. Lervick in Opposition to Defendant's Motion to Compel ("Lervick Decl."), ¶3 [Docket No. 46].  RTI was adamant that it was not obliged to solve Data's technology issues.

This Court denied Data's motion that requesting that RTI produce the the "file extensions" in a different format that RTI has already produced. The explanation provided by Data's counsel regarding Data's inability to open these files was inadequate, particularly in light of the fact that Data had the ability during the course of the parties' relationship to open the files and that no evidence was presented showing that Data could not purchase the technology required to open the files.

5. **RTI and Subtle Electonic Documents**

   **Request No. 49**:  All documents referring to or relating to the relationship between RTI and Subtle Electronic Limited Co.

9

In support of its motion, Data stated that Subtle is a third party witness who had manufactured for Data the remote controls at issue in this case and has continued to produce remotes controls for RTI after Data and RTI's business relationship ended. Also RTI had identified Subtle employees as a witnesses on its initial disclosures. RTI countered that that the documents sought bearing on RTI's direct relationship with Subtle following the termination of RTI's relationship with Data were not relevant to any claims or defenses in this case. This Court agreed with RTI's position and denied Data's motion as to Document Request No. 49, finding that the information sought was not likely to lead to the discovery of admissible evidence.

6. **Quantity of Remote Controls**

   **Request for Production No. 57**: All documents referring or relating to or evidencing the quantity of T2C remote controls that RTI purchased from on a monthly and yearly basis by model number.

   **Request for Production No. 61**: All documents referring to or relating to or evidencing the quantity of T3 remote controls that RTI purchased from [ ] on a monthly and yearly basis by model number.

RTI indicated at the motion hearing that it believed that it had produced information responsive to Document Request Nos. 57 and 61, but was uncertain if this was so. This Court asked RTI to confirm the scope of its production of documents in response to Document Requests Nos. 57 and 61 following the hearing, which RTI did do by letter. In that letter, RTI indicated that it produced invoices and shipping records reflecting the purchase of specified T2C and T3 remote controls, but that the documents produced did not represent a complete set of invoices. RTI's counsel represented that

RTI would supplement its production if it determined that it had additional invoices in its possession, custody or control.

On or before December 30, 2011, RTI shall either produce the additional invoices it has located that are responsive to this discovery, or confirm in writing that it cannot locate any more responsive documents.

7. **Sample Circuit Boards**

   **Request for Production No. 86**: Any samples of blank circuit boards, circuit board assemblies, and/or ball grid arrays for T2C and/or T3 remote controls in the possession of RTI for which RTI has determined that the blank circuit boards, circuit board assemblies, and/or ball grid arrays were not properly manufactured to specifications or where rejected for some other reason.

RTI indicated that Data could inspect the defective boards at RTI's facility in Shakopee, Minnesota. But Data wanted all of the boards, which number between 5,000-6,000 boards, sent to Taiwan, where Data's manufacturing facility is located and where Data's experts and in-house counsel are located. Data argued that it should have access to the defective boards so its experts could assist in the examination of RTI's experts at their depositions and at trial. Additionally, Data reported that RTI had shipped samples to its experts in Alabama and that Data should have the same opportunity for its experts to exam and test[5] the allegedly defective boards. RTI expressed its great concern about shipping all of the boards to Taiwan, but indicated its willingness to make a sample of the boards available for inspection (but not destructive testing) by Data's expert at RTI's facility in Shakopee. Additionally, RTI was concerned that Data's testing of the circuit boards at this point would inevitably result in Data

---

[5] Counsel for RTI indicated that as a result of the latent nature of the defects in the circuit boards the only type of testing that was possible was destructive testing.

seeking to reopen expert discovery.  RTI admitted that its experts had conducted destructive testing on 72 boards from batches of the defective T2C and T3 remote controls.

The Court granted Data's request regarding Request for Production No. 86 to this extent: Data will be allowed to inspect all of the boards at RTI's Shakopee location on or before December 16, 2011.  Data may then select up to 72 defective boards for shipment to Data's experts in Taiwan for inspection and destructive testing.  Data shall bear the costs associated with the inspection in Shakopee and shipment of the boards to Taiwan.  As to RTI's concern that such testing would result in Data seeking to reopen expert discovery, all objections by RTI to such discovery are reserved.

J.S.M.